# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| TYLER BOOTH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:08CV758DJS/MLM |
| | ) | |
| JEAN ANN JOHNSON, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the Petition Under 28 U.S.C. § 2254 by a Person in State Custody filed by Petitioner Tyler Booth ("Petitioner"). Doc. 1.  Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 10.  This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 8.

## I.
## BACKGROUND

In Count I of an Information Petitioner was charged with the Class C felony of possession of a controlled substance in that on December 11, 2002, in the City of St. Louis, Petitioner possessed cocaine base, a controlled substance, knowing of its presence and nature.  In Count I Petitioner was charged as a prior and persistent drug offender in that he had pleaded guilty to three controlled substance related felonies.  In Count II Petitioner was charged with the Class B misdemeanor of trespass in that on December 11, 2002, in the City of St. Louis, Petitioner "knowingly remained unlawfully upon real estate property owned by the St. Louis Housing Authority, notice against trespass upon said real estate having been given by actual communication to [Petitioner]."  In the

Information Petitioner was charged as a prior and as a persistent offender in that he had pleaded guilty to three felonies. Resp. Ex. B at 13-14.

The evidence at Petitioner's trial was that Cochran Gardens is a housing complex owned by the St. Louis Housing Authority; that only residents and guests accompanied by residents are permitted on the property; that numerous "No Trespassing" signs are posted in the area of Cochran Gardens; that on December 11, 2002, neither Petitioner nor any relative of his was a resident of Cochran Gardens; that at around 11:00 a.m. on December 11, 2002, St. Louis police officers Mark Biondolino, Jerone Jackson, and Mike Matthews were on patrol in Cochran Gardens when they saw Petitioner in a concourse; that when Petitioner saw the police officers he began walking away from them and toward the parking lot; that due to complaints of drug and gang activity the officers approached Petitioner to see if he was a resident; that Petitioner told the officers that he was not a resident, that he was not visiting anybody, that he did not know about the trespassing rule, and that he would not return unless he moved there or had a girlfriend there; and that the officers then gave Petitioner a warning and left. Resp. Ex. A, Trial Transcript ("Tr.") at 157-63, 173-200.

Further, the testimony at Petitioner's trial was that in the afternoon of December 11, 2002, the officers saw Petitioner and two other men standing in a concourse in Cochran Gardens; that, as the officers approached, the two other men ran into a building; that when asked if he was visiting someone, Petitioner replied, "you motherfuckers already know I don't know anybody down here, do what you got to do"; that Petitioner was then told he was under arrest; that Petitioner was read his rights, patted down, detained in the patrol car, and then taken to police headquarters for booking; that Officer Jackson told Petitioner to take everything out of his pockets and place it on the table; that Petitioner placed two baggies containing what appeared to be crack cocaine on the table; that Petitioner was then told that he was also being charged with possession and was again advised of his

rights; that Petitioner said that the other two men had handed the baggies to him to hold for them and that they "had all the dope"; and that crime lab tests revealed that one of the baggies contained cocaine base weighing .60 grams and the other one was negative for controlled substances. Tr. at 178-206, 219.

Petitioner testified at trial that he had been visiting the brother of a resident; that he had not received a previous trespassing warning; that he told police that he was visiting a resident; that he was hit by the police at the police station; and that he never took drugs out of his pocket or saw any drugs. Tr. at 225-69. In rebuttal, Officer Jackson testified that he and Officer Biondolino were the only officers with Petitioner during his booking and that neither of them hit Petitioner or planted drugs on him. Tr. 270-72.

Petitioner was found guilty as charged. The court found Petitioner was a persistent drug offender and a persistent offender and sentenced him to fifteen years in the Missouri Department of Corrections for possession and thirty days, time served, for trespassing. Resp. Ex. B at 62-63.

Petitioner filed a direct appeal, which the Missouri appellate court denied on November 1, 2005. Resp. Ex. C, Ex. E. The appellate court issued the Mandate on Petitioner's direct appeal on April 8, 2005. Resp. Ex. K. Petitioner filed a pro se post-conviction relief motion on February 13, 2006. Resp. Ex. G at 3-9. On June 12, 2006, Counsel filed an Amended Motion to Vacate, Set Aside, or Correct Judgment and Sentence and Request for Evidentiary Hearing. Resp. Ex. G at 13-26. On March 13, 2007, the motion court dismissed Petitioner's post-conviction relief motion. Resp. Ex. G at 33-35. Petitioner filed an appeal of the decision of the motion court. Resp. Ex. H. On April 8, 2008, the Missouri appellate court affirmed the judgment against Petitioner and issued the Mandate. Resp. Ex. J, Ex. K. Petitioner filed his § 2254 Petition on May 27, 2008. Doc. 1. In his § 2254 Petition, Petitioner raises the following issues:

**(1)** Petitioner's arrest was illegal;

**(2)** Petitioner received ineffective assistance of counsel because counsel failed to properly argue his case, to inform him of the consequences of testifying, to inform the jury not to use his prior convictions against him, and to show the jury that Petitioner was not trespassing;

**(3)** The trial court erred in allowing all six of the prosecutor's peremptory strikes.

Doc. 1.

## III.
## EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." Id. at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S.

386, 388-89 (2004).  See also Coleman, 501 U.S. at 750  (holding that a state habeas petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or demonstrate that default will result in a fundamental miscarriage-of-justice; Battle v. Delo, 19 F.3d 1547, 1552 (8th Cir. 1994).  The United States Supreme Court has held that because the "cause and prejudice standard is not a perfect safeguard against fundamental miscarriages of justice" the Court has "recognized a narrow exception to the cause requirement where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." Dretke, 541 U.S. at 393 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986); Schlup v. Delo, 513 U.S. 298 (1995)).  "[A] habeas petitioner who wishes to have a procedurally defaulted claim evaluated on its merits 'must show by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner [guilty] under the applicable state law.'" McCoy v. Lockhart, 969 F.2d 649, 651 (8th Cir. 1992 ) (citation omitted).  Actual innocence is required to meet the miscarriage-of-justice exception.  See Sweet, 125 F.3d at 1152 (citing Schlup, 513 U.S. at 316).  The Supreme Court, however, has limited the application of the actual innocence exception to the capital sentencing context.  See Dretke, 541 U.S. at 393.  In Dretke, the Court declined to extend the actual innocence exception to procedural default of constitutional claims challenging noncapital sentencing error.  Rather, the Court held "that a federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default." Id. at 393-94.

It has been held that "novel circumstances and arguments" may constitute cause to excuse procedural default.  McKinnon v. Lockhart, 921 F.2d 830, 833-34 (8th Cir. 1990). "[T]he Supreme Court [has] recognized that cause may exist when the claim raised is so novel that there was no

reasonable basis to have asserted it at the time of a petitioner's state appeals." Id. at 833(citing Reed v. Ross, 468 U.S. 1, 16 (1984)). However, "[if] the 'tools were available' for a petitioner to construct the legal argument at the time of the state appeals process, then the claim cannot be said to be so novel as to constitute cause for failing to raise it earlier." Id. (citing Leggins v. Lockhart, 822 F.2d 764, 766 (8th Cir.1987)).

In regard to the "prejudice" component of "cause and prejudice," as discussed above, "actual prejudice" is required to overcome the procedural bar. Zinzer v. Iowa, 60 F.3d 1296, 1299 (8th Cir. 1995). "Prejudice, within the meaning of [the ineffective assistance of counsel standard of Strickland v. Washington, 466 U.S. 668 (1984)] occurs when appellate counsel's deficient performance renders the result of the direct appeal unreliable or fundamentally unfair." Id. The Eighth Circuit, however, holds that the "'prejudice' component of 'cause and prejudice' [necessary to excuse procedural default] is analytically distinct from the Strickland prejudice." Id. at 1299 n.7. The "'actual prejudice' required to overcome the procedural bar must be a higher standard than the Strickland prejudice required to establish the underlying claim for ineffective assistance of counsel." Id. (citing United States v. Frady, 456 U.S. 152, 165-68 (1982) (holding that to obtain habeas relief on a defaulted claim, a petitioner must clear a significantly higher hurdle than would exist on direct appeal).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile remedies,' through which the petitioner can present his claim." Id. (citation omitted).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254.

In his direct appeal Petitioner only alleged that the prosecutor's strike of Venireperson Terry Heard was improper. In the appeal of his post-conviction relief motion Petitioner only alleged that he received ineffective assistance of counsel because counsel failed to inform the jury that it should not use Petitioner's prior convictions against him. Thus, Petitioner has procedurally defaulted all issues which he raises before this court with the exception of that aspect of Ground 2 which addresses the failure of counsel to inform the jury not to use Petitioner's prior convictions against him and that aspect of Ground 3 which addresses Venireperson Heard. Petitioner has failed to suggest why his procedural default should be excused. As such, the court finds that Petitioner has procedurally defaulted all issues which he raises in his § 2254 Petition with the exception of that aspect of Ground 2 which addresses the failure of counsel to inform the jury not to use Petitioner's prior convictions against him and that aspect of Ground 3 which addresses Venireperson Heard. Further, the court finds that Petitioner's § 2254 Petition is timely filed.

## III.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Evenstad v. Carlson, 470 F.3d 777, 782-83 (8th Cir. 2006) (quoting Williams v. Taylor,

529 U.S. 362, 412 (2000)).  To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent he thinks the state courts acted contrary to or applied unreasonably. Id. at 283 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000)).  Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. §2254(d)(1)." Id. at 784.  "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1). Id. at 783 (citing Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002)). See also Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (holding that in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254.  The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." Id. at 412.  The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." Williams, 529 U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar

cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1)."), cert. denied, 543 U.S. 1027 (2004).

The United States Supreme Court has defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505

U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 644 (2004).

**IV.**
**DISCUSSION**

**Ground 2 - Petitioner received ineffective assistance of counsel because counsel failed to inform the jury not to use his prior convictions against him**:

Upon considering Petitioner's argument that he received ineffective assistance of counsel because counsel failed to inform the jury not to use his prior convictions against him, the Missouri appellate court held:

> To obtain a hearing on a motion alleging ineffective assistance of counsel, a movant must allege facts, not refuted by the record, that show that trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances and that the movant was thereby prejudiced. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed. 674, 693 (1984). To establish prejudice, a movant must show that "but for counsel's poor performance, there is a reasonable probability that the outcome of the court proceeding would have been different." Barnett, 103 S.W.3d at 768-69. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2052. If movant fails to satisfy either prong, we will deny relief. State v. Simmons, 955 S.W.2d 752, 772 (Mo. banc 1997) ... .

> We presume that counsel acted professionally in making decisions and that any challenged action was part of counsel's reasonable trial strategy. [citations omitted]. A movant must prove his or her claim for relief by a preponderance of the evidence. Rule 29.15(i).

> At trial, movant testified on his own behalf. On direct examination, movant testified that he had three prior drug convictions and had received probation. On cross-examination, movant admitted that he pleaded guilty to two counts of possession of cocaine base in February, 1999, for which he received a suspended sentence; that he was convicted of distribution near a school in September, 1999, for which he received an eleven-year suspended execution of sentence and two years probation; and that he was convicted in July, 2000 of selling a controlled substance, for which he received a five-year suspended execution of sentence and five years probation.

> After the instruction conference, the trial court read into the record the instructions it proposed to give. The package of instructions did not include an

instruction based on MAI-CR3d 310.10. Defense counsel had no objection to the instructions.

In closing argument, the prosecutor argued that movant's prior drug convictions showed his knowledge of what cocaine base was and argued that defendant had invented his story because of the prior convictions.

In his closing argument, defense counsel focused on circumstances that supported the credibility of defendant's denials that he trespassed knowingly and possessed the drugs. He also emphasized that defendant's prior convictions could not establish his guilt. In rebuttal, the prosecutor referred to the convictions only to support her claim that movant was not credible.

... .

The motion court found that movant failed to plead facts that, if true would entitle him to relief. It explained:

> The decision to request MAI-CR 3d 310.10 is optional with counsel. Counsel must weigh the potential negative impact of reminding the jury of each and every prior guilty plea against the value of explicit instruction regarding the limited purpose of such evidence. Counsel in this case obviously chose simply to mention the matter in argument. Counsel is presumed to function within the wide range of reasonable professional competence. The facts pleaded by [movant] are facially insufficient to show deficient performance or prejudice. The evidence against him was simple and straightforward, and the jury's decision turned on credibility, not propensity.

The motion court concluded that the facts pleaded by movant did not show trial counsel's deficient performance or prejudice to movant, and it denied the motion.

MAI-CR 3d 310.10 provides:

**310.10 IMPEACHMENT OF DEFENDANT BY CONVICTION OF "UNRELATED CRIMES" SHOWN SOLELY FOR THE PURPOSE OF IMPEACHMENT**

If you find and believe from the evidence that defendant (was convicted of) (was found guilty of) (pled guilty to) (pled nolo contendere to) the offense of [ *specify the offense* ], you may consider that evidence for the sole purpose of deciding the believability of the defendant and the weight to be given to his testimony and for no other purpose. (You must not consider such previous (conviction) (finding of guilt) (plea of guilty) (plea of nolo contendere) as any evidence that the defendant is guilty of any offense for which he is now on trial.)

The notes on Use following the instruction provide:

> 2. [t]his instruction should be given only where the evidence of the prior conviction, plea of guilty, plea of nolo contendere, or finding of guilt was admitted for the purpose of impeaching the defendant. It must be given if requested by either party. The last sentence in parentheses may be given only if requested by the defendant regardless of which party requested the instruction.

> An objectively reasonable choice by trial counsel not to submit an available limiting instruction does not constitute ineffective assistance of counsel. [citations omitted]. It is not unreasonable for trial counsel to decide not to request MAI-CR 3d 310.10 to avoid underscoring a movant's prior convictions. State v. Shurn, 866 S.W.2d 447, 469 (Mo. banc 1993) ... .

> The record discloses that the defense turned on defendant's credibility. MAI-CR 3d 310.10 would have instructed the jury that they could consider the four prior convictions in assessing defendant's credibility. Defense counsel's decision not to request the court to give such an instruction, which would have damaged defendant's position that his story was credible, was reasonable trial strategy. Butler, 904 S.W.2d at 73.

> The motion court did not clearly err in denying an evidentiary hearing on movant's Rule 29.15 motion. The judgment of the motion court is affirmed.

Resp. Ex. J at 3-6 (emphasis in original).

Pursuant to Williams, the court will consider federal law applicable to Petitioner's claim of ineffective assistance of counsel. Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome

this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 697. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 669. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Id. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

Under federal law prior convictions may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or *absence of mistake* or accident." United States v. Shoffner, 71 F.3d 1429, 1431-32 (8th Cir. 1995) (citing Fed. R. Evid. 404(b)) (emphasis added). Also, under federal law "prior convictions are admissible for impeachment purposes." United States v. Buchanan, 659 F.2d 878, 879 (8th Cir. 1981). See also Fed. R. Evid. 609.

This court notes that Petitioner's credibility was at issue and that the prosecutor directed the jury's attention to Petitioner's prior convictions to demonstrate that Petitioner knew what cocaine base was. Upon considering whether Petitioner received ineffective assistance of counsel the Missouri appellate court held that the two-pronged test of Strickland was applicable and that, therefore, for Petitioner to prevail he must show that counsel's performance was both unreasonable and prejudicial. The appellate court further considered the prosecutor's closing argument wherein the prosecutor argued that Petitioner's prior drug convictions showed that he knew what cocaine base was and that Petitioner fabricated his story because of his prior convictions. The appellate court also considered that in closing argument defense counsel focused on the credibility of Petitioner's denials that he trespassed knowingly and possessed the drugs and that counsel argued that Petitioner's prior convictions did not establish his guilt. The Missouri appellate court found that counsel's conduct in failing to request the limiting instruction was not unreasonable because doing so avoided underscoring Petitioner's prior convictions. The appellate court further found that a limiting instruction regarding Petitioner's prior convictions would have damaged Petitioner's credibility regarding his defense of lack of knowledge. As such, consistent with the first prong of the Strickland test for ineffective assistance of counsel, the Missouri appellate court found that counsel's performance was not unreasonable. Consistent with the second prong the Missouri appellate court found that Petitioner was not prejudiced by counsel's conduct. The court finds, therefore, that the decision of the Missouri

appellate court regarding the issue of Petitioner's Ground 2 is not contrary to federal law and that

it is a reasonable application of federal law. See Strickland, 466 U.S. at 687; Shoffner, 71 F.3d at

1431-32; Buchanan, 659 F.2d at 879.   Additionally, the Missouri appellate court reasonably applied

federal law to the facts of Petitioner's case. As such, the court finds that Petitioner's claim that he

received ineffective assistance of counsel because counsel failed to ask the jury not to consider his

past convictions is without merit and that Petitioner should be denied habeas relief on this basis.

**Ground 3 - The trial court erred in permitting the prosecutor's peremptory strike of Venireperson Heard:**

The Missouri appellate court held as follows upon addressing Petitioner's claim that the trial

court erred in allowing the prosecutor's peremptory strike of Venireperson Heard:

The defendant alleges an improper strike of one African-American venireperson in violation of Batson v. Kentucky, 476 U.S. 79 (1986).  Finding no error we affirm.

...

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits the use of peremptory strikes to remove a potential juror solely on the basis of the juror's gender, ethnic origin, or race. Batson, 476 U.S. at 97; ... .  The United States Supreme Court has declined to formulate specific rules or procedures for implementing Batson and its progeny, so within constitutional parameters, the courts are free to develop procedures for addressing Batson challenges. Batson, 476 U.S. at 99 n.24; Parker, 836 S.W.2d at 938.

Accordingly, Missouri has adopted a three-step procedure to resolve a Batson challenge. Strong, 142 S.W.3d at 712; Parker, 836 S.W.2d at 939.  First, the defendant must timely raise a Batson challenge to the prosecutor's peremptory strike and must identify the cognizable racial group to which the venireperson belongs. Strong, 142 S.W.3d at 712; Parker, 836 S.W.2d at 939.  Once the prosecutor provides a race-neutral reason for the strike, the burden shifts to the defendant to show that the prosecutor's proffered reason for the strike was merely pretextual and that the strike was actually motivated by the venireperson's race. Strong, 142 S.W.3d at 712; Parker, 836 S.W.2d at 939. A defendant may not challenge an explanation on appeal that he or she did not properly challenge in the trial court. Miller, 162 S.W.3d at 14.

At the first stage, a Batson challenge is timely where it is made before the venire is excused and the jury is sworn. Parker, 836 S.W.2d at 939.  At the second

step of a <u>Batson</u> inquiry, the issue is the facial validity of the prosecutor's explanation. <u>Hernandez</u>, 500 U.S. at 360. The prosecutor's explanation need not be persuasive. <u>Purkett v. Elem</u>, 514 U.S. 765, 768 (1995); ... . The explanation need not rise to the level of justifying exercise of a challenge for cause. <u>Batson</u>, 476 U.S. at 97; <u>Parker</u>, 836 S.W.2d at 934. The prosecutor's initial explanation for striking a venireperson is deemed race-neutral unless a discriminatory intent is inherent in the explanation. <u>Purkett</u>, 514 U.S. at 768; ... . Disparate impact on minority venirepersons, standing alone, does not result in a per se equal-protection violation. <u>Hernandez</u>, 500 U.S. at 361; ... .

When the prosecution provides a race-neutral reason for the strike, the burden shifts back to the defendant to show that the prosecution's explanation was merely a pretext for a racially motivated strike. ... . At that point, the court focuses on the plausibility of the prosecutor's explanation in light of the totality of the facts and circumstances surrounding the case as the court determines whether the explanation is pretextual. <u>Purkett</u>, 514 U.S. at 768; ... .

The trial court should consider several factors in making its determination. ... . The first factor is the existence of similarly situated white jurors whom the prosecutor did not strike. ... . Although not dispositive, this factor is crucial in determining pretext. ... . The second factor is the degree of logical relevance between the prosecutor's explanation and the case to be tried in terms of the type of crime charged, nature of the evidence to be adduced, and potential punishment upon conviction. ... . The third factor is the prosecutor's credibility based on his or her demeanor or statements during voir dire and the trial court's experience with the prosecutor. ... . A fourth factor is the excluded venireperson's demeanor. ... . Objective factors bearing on the prosecutor's motive to discriminate on the basis of race such as prevailing community conditions and the race of the defendant, the victim, and the material witnesses, also warrant consideration. ... .

In the instant case, the trial court overruled the defendant's <u>Batson</u> challenge to the prosecutor's peremptory strike of Terry Heard, an African-American. On appeal, the defendant alleges that the trial court erred in overruling his <u>Batson</u> challenge in that the prosecutor's strike of Ms. Heard was racially motivated and the proffered reasons for the strike were pretextual. The defendant argues that the prosecutor did not strike a similarly situated venireperson, namely juror 19 who was identified on appeal as Ms. Torrez. The State contends that the defendant failed to carry his burden of proving purposeful discrimination. We agree.

In this case, the prosecutor made a peremptory strike of venireperson Terry Heard, an African-American female. The defendant timely raised a <u>Batson</u> challenge and alleged that, "the prosecutor's strike is racially motivated and the juror is a black female and my client is black." This satisfies the first step in Missouri's three-step procedure.

The prosecutor then explained her reasons for excluding Ms. Heard: "Ms. Heard is a teacher with young children. The State's found in its experience that a lot of times in these types of cases, teachers tend to be very compassionate to the defense." The prosecutor further explained that Ms. Heard had written on her panel questionnaire that she had been a crime victim, but did not disclose it when the prosecutor asked the question in voir dire. The prosecutor articulated two race-neutral reasons for striking Ms. Heard: her employment as a teacher and her failure to disclose during voir dire that she had been a crime victim. Employment has been held to be a legitimate basis for peremptorily striking a venireperson. ... .

Following the prosecutor's race-neutral explanation, the burden shifted to the defendant to show that the proffered explanation was mere pretext for a racially motivated strike. ... . Defense counsel's initial response to the prosecutor's proffered explanation was, "Your Honor, the reasons are merely pretextual [sic], and that's all I have to say." Upon further inquiry by the trial court, the prosecutor reiterated that experience led her to believe that teachers and social workers tend to be sympathetic to the defense in drug cases. The defendant then identified juror number 19 as similarly situated to Ms. Heard because juror number 19 stated she delivered food and toys to the Cochran Gardens housing development for a charity.

We find that Ms. Torrez was not a similarly situated white venireperson. Ms. Torrez was not a teacher like Ms. Heard, and Ms. Torrez did not fail to reveal information during voir dire. Neither of the prosecutor's proffered reasons for excluding Ms. Heard applies to Ms. Torrez.

Finally, the record clearly shows that the trial court considered the totality of the facts and circumstances of the case in evaluating the defendant's <u>Batson</u> challenge. The trial court expressly considered the racial makeup of the group of 24 venirepersons from which the jury was chosen and the jury as tentatively selected. The trial court considered the logical relevance between the instant drug possession case and the prosecutor's proffered explanation that experience informed her that teachers tend to be "very compassionate to the defense" in drug cases. The trial court considered the "voir dire as a whole" and the demeanor of the prosecutor and her credibility. Nothing in the record indicates the venireperson's demeanor influenced the trial court's determination.

In view of the trial court's consideration of the totality of the facts and circumstances of the case, especially the lack of any similarly situated white venireperson not excluded by the prosecutor, we find no clear error. Point denied.

Resp. Ex. E at 2-7.

Pursuant to <u>Williams</u> the court will consider federal law applicable to Petitioner's allegation

of a <u>Batson</u> violation in regard to Venireperson Heard. Federal law is well settled that the Equal

Protection Clause forbids a prosecutor from using peremptory challenges to exclude otherwise qualified persons from the jury based solely on their race. Devose v. Norris, 53 F.3d 201, 204 (8th Cir. 1995). In Batson, 476 U.S. at 96, the United States Supreme Court held that "in order to establish an equal protection violation, a defendant must first establish a prima facie case of purposeful discrimination in the selection of the jury panel." The Eighth Circuit has further explained that:

> To establish a prima facie case, the defendant must show that he is a member of a cognizable racial group and that the prosecutor exercised peremptory challenges to remove members of his race from the venire. Batson, 476 U.S. at 96. He then "'must show that these facts and any other relevant circumstances raise an inference that the prosecutor used [his peremptory] practice to exclude the veniremen from the petit jury on account of their race.'" United States v. Battle, 836 F.2d 1084, 1085 (8th Cir. 1987) (quoting Batson, 476 U.S. at 96). Once the defendant has established a prima facie case of race discrimination, the government has "the burden of articulating a clear and reasonably specific neutral explanation for removing a venireperson of the same race as the defendant." United States v. Cloyd, 819 F.2d 836, 837 (8th Cir. 1987).
>
> Whether an explanation is neutral is a question of comparability. "It is well-established that peremptory challenges cannot be lawfully exercised against potential jurors of one race unless potential jurors of another race with comparable characteristics are also challenged." Doss v. Frontenac, 14 F.3d 1313, 1316-17 (8th Cir. 1994) [remaining citations omitted].

Devose, 53 F.3d at 204. See also United States v. Hill, 249 F.3d 707, 714 (8th Cir. 2001) (denying Batson claim when the defendant failed to show that similarly situated white venirepersons were not struck from the jury panel); United States v. Brooks, 2 F.3d 838 (8th Cir. 1993).

Thus, Batson provides for a "three-step process for analyzing a prosecutor's use of peremptory strikes." Weaver v. Bowersox, 241 F.3d 1024, 1028 (8th Cir. 2001). See also Hernandez v. New York, 500 U.S. 352, 358 (1992). Upon a federal court's review of a state trial court's rulings pursuant to Batson objections, the Eighth Circuit has noted that "a trial court's determination of the Batson prima facie step is highly fact-intensive," and "is based largely upon information 'that will not be evident from a reading of the record.'" Weaver, 241 F.3d at 1030 (citing United States v. Moore,

895 F.2d 484, 485-86 (8th Cir. 1990)). See also Smulls v. Roper, 535 F.3d 853, 864 (8th Cir. 2008) (holding that pursuant to § 2254 review a federal court's "'deference to trial court fact-finding is doubly great when considering Batson challenges because of the unique awareness [on the part of the trial court] of the totality of the circumstances surrounding voir dire.'") (quoting Simmons v. Luebbers, 299 F.3d 929, 942 (8th Cir.2002)); United States v. Elliott, 89 F.3d 1360, 1364 (8th Cir. 1996) ("'[E]valuation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'") (quoting Hernandez, 500 U.S. at 365). On habeas review, pursuant to 28 U.S.C. § 2254(e)(1), federal courts afford "broad latitude in determining questions of fact by virtue of the statutory presumption in favor of the state court fact-finding." Weaver, 241 F.3d at 1030. Because Batson claims require factual determinations, federal review of a Batson claim pursuant to a habeas petition is governed by §2254(d)(2). Id. at 1031 n.2.

In Hernandez, 500 U.S. at 359-60, the Supreme Court held that "[a] court addressing [a Batson] issue must keep in mind the fundamental principle that 'official action will not be held unconstitutional solely because it results in a racially disproportionate impact.... Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.'" Thus, "discriminatory purpose" for a successful Batson challenge means that a juror was struck "at least in part 'because of'" his race. Id. at 360. Further, "[a] neutral explanation in the context of [a court's] analysis [] means an explanation based on something other than the race of the juror." Id. "[D]isparate impact should be given appropriate weight in determining whether the prosecutor acted with a forbidden intent, but it will not be conclusive in the preliminary race-neutrality step of the Batson inquiry." Id. at 362.

The Supreme Court has held that when a Batson challenge is made the trial court must "evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether

the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor." Snyder v. Louisiana, 128 S.Ct. 1203, 1208 (2008). The Court further holds that a prosecutor's observations about a potential juror in voir dire, as well as what is said, may form a legitimate nondiscriminatory reason for exercising a peremptory strike. Purkett v. Elem, 514 U.S. 765, 768-69 (1995).

The Eighth Circuit has "consistently allowed the government to use employment status as a valid, race-neutral proxy for juror selection, so long as the government exercises its challenges in a consistent manner. United States v. Atkins, 25 F.3d 1401, 1406 (8th Cir. 1994) (citing United States v. Johnson, 905 F.2d 222 (8th Cir. 1990) (holding that employees of the Division of Family Services could be struck since the employees might be overly sympathetic to the defendant). In particular, in United States v. Miller, 939 F.2d 605, 608 (8th Cir. 1991), the prosecutor struck three jurors because of their association with the education field and struck other jurors based on their occupation. In response to Batson challenges regarding the venirepersons in the education field, the prosecutor stated that, "based upon his experience, 'teachers tend to be more forgiving of individuals and more sympathetic and would not make a good juror.'" Id. at 607. The district court accepted the prosecutor's explanations as reasonable and race-neutral, and ruled that there was no Batson violation. The Eighth Circuit agreed and deferred to the district court's finding. Id. at 609.

In the matter under consideration, upon considering Petitioner's Batson challenge in regard to Venireperson Heard, the Missouri appellate court first identified the governing principles as established by federal law, including Batson, 476 U.S. 79, and Hernandez, 500 U.S. 352. See Kinder, 272 F.3d at 544. Consistent with Batson, the Missouri appellate court then considered the procedure that was applicable upon Petitioner's making a Batson challenge and determined that the trial court followed a procedure which assured that Petitioner's right to equal protection was not violated. In

particular, at the first step of the <u>Batson</u> analysis, the Missouri appellate court found that Petitioner raised a timely <u>Batson</u> challenge. See <u>Devose</u>, 53 F.3d at 204. At the second step of the <u>Batson</u> analysis, the Missouri appellate court concluded that the prosecutor's explanation for striking Venireperson Heard was race neutral. <u>See</u> <u>Devose</u>, 53 F.3d at 204. In particular, and consistent with federal law, the Missouri appellate court found that employment is a legitimate basis for a peremptory strike and that, in Petitioner's case, it was race neutral. <u>See</u> <u>Atkins</u>, 25 F.3d at 1402; <u>Miller</u>, 939 F.2d at 609. Further, the Missouri appellate court found that the strike of Venireperson Heard based on her failure to disclose that she was a crime victim was also race neutral. Consistent with federal law, at the third step of the <u>Batson</u> analysis, the Missouri appellate court considered that Petitioner's counsel failed to establish that the prosecutor's proffered reason was pretextual as the jurors whom defense counsel referenced as being similarly situated to Venireperson Heard were not in fact similarly situated. <u>See</u> <u>Devose</u>, 53 F.3d at 204. Finally, consistent with federal law, the Missouri appellate court considered that totality of the circumstances, including the racial makeup of the venire panel, the voir dire as a whole, and the prosecutor's demeanor and credibility, and concluded that Petitioner's <u>Batson</u> challenge was without merit. <u>See</u> <u>Snyder</u>, 128 S.Ct. at 1208; <u>Weaver,</u> 241 F.3d at 1030. As such, the court finds that the decision of the Missouri appellate court in regard to Petitioner's claim, pursuant to <u>Batson</u>, that the trial court erred in sustaining the prosecutor's peremptory strike of Venireperson Heard is not contrary to federal law and that it is a reasonable application of federal law. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. As such, the court finds that Petitioner's claim in Ground 3 that the trial court erred in sustaining the prosecutor's peremptory strike of Venireperson Heard is without merit and that relief on its basis should be denied.

## VI.
## CONCLUSION

For the reasons stated above, the court finds that Petitioner has procedurally defaulted Grounds 1, 2 and 3 with the exception of Petitioner's allegation in Ground 2 that he was denied effective assistance of counsel because counsel failed to inform the jury that it should not use Petitioner's prior convictions against him and Petitioner's allegation in Ground 3 that the trial court erred in permitting the prosecution's peremptory strike of Venireperson Heard. The court further finds that Petitioner's claim in Ground 2 that he was denied effective assistance of counsel because counsel failed to inform the jury that it should not use Petitioner's prior convictions against him and his claim in Ground 3 that the trial court erred in permitting the prosecution's peremptory strike of Venireperson Heard are without merit. As such, the court finds that Petitioner's § 2254 petition for habeas relief should be denied in its entirety. The undersigned further finds that the grounds asserted by Petitioner do not give rise to any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. See Tiedeman v Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 be **DENIED**; Doc. 1.

**IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability should be **DENIED**.

The parties are advised that Petitioner has eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER

Dated this 9th day of  March, 2009.      UNITED STATES MAGISTRATE JUDGE